**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 21 2014, 8:24 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CATHERINE S. CHRISTOFF**
Christoff & Christoff Attorneys
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**DAVID E. COREY**
Deputy Attorney Generals
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION   )
OF THE PARENT-CHILD RELATIONSHIP OF:   )
    )
Z.J.C. (Minor Child)   )
    )
    and   )
    )
L.C. (Mother)   )
    Appellant-Respondent,   )    No.  02A03-1404-JT-127
    )
    vs.   )
    )
THE INDIANA DEPARTMENT OF   )
CHILD SERVICES,   )
    )
    Appellee-Petitioner.   )

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Charles F. Pratt, Judge
Cause No. 02D08-1307-JT-74

**November 21, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

L.C. ("Mother") appeals the termination of her parental rights as to Z.J.C. ("Child"). We affirm.

## Issue

Mother raises two issues for our review, which we restate as the single issue of whether the order terminating her parental rights was supported by clear and convincing evidence.

## Facts and Procedural History

Child was born on April 17, 2009. In September 2009, a domestic violence incident involving Mother and her parents resulted in Child's removal from Mother's care. On October 16, 2009, the Allen County Department of Child Services ("DCS") filed a petition alleging that Child was a Child in Need of Services ("CHINS"). Child was adjudicated a CHINS on October 28, 2009.

During the course of the CHINS case, Mother attempted suicide and was eventually diagnosed with depression. She was also determined to have abused cocaine, and admitted to alcohol and marijuana use. Mother was also involved in several romantic relationships in which she was the victim of abuse.

After Mother completed a substance abuse program in 2011, Child was returned to her care in December 2011. After Mother tested positive for use of cocaine on several

occasions, Child was again removed from Mother's care in May 2012. Child never returned to Mother's care.

In December 2012, DCS placed Child into the custody of Mother's cousins. Because Mother's cousins were not licensed foster parents, the court ordered Mother to pay weekly child support in the amount of $60.00; she never made these payments. Also in 2012 and 2013, Mother twice failed to complete DCS-ordered substance abuse treatment programs, but would eventually complete a program in November 2013, only to test positive for cocaine use soon afterward.

On December 4, 2012, DCS filed a motion to terminate its wardship of Child. The trial court signed an order to that effect on January 14, 2013, but that order was not contemporaneously entered into the Chronological Case Summary ("CCS") or provided to DCS.

On February 18, 2013, Mother's cousins informed DCS that they could not provide a long-term home for Child. Consequently, on February 28, 2013, DCS filed a motion to withdraw its prior motion to terminate the wardship. Mother opposed this, but on March 12, 2013 and after a hearing, the trial court reinstated DCS's wardship of Child.

On July 9, 2013, DCS filed its petition to terminate Mother's parental rights as to Child. A hearing on the petition was conducted on January 14 and 15, 2014.

On April 10, 2014, the court entered its order terminating Mother's parental rights. This appeal ensued.

**Discussion and Decision**

Legal Standard

Mother appeals the termination of her parental rights. Our standard of review is highly deferential in such cases. In re K.S., 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). This Court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. In re A.A.C., 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, we neither reweigh the evidence nor judge the credibility of the witnesses. Id. We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. Id.

Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. In re L.S., 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), trans. denied.

Indiana Code section 31-35-2-4(b)(2) sets out the elements that DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

(A) That one (1) of the following is true:

      (i)     The child has been removed from the parent for at least six (6) months under a dispositional decree.

      (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are

4

not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) That one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

If the court finds that the allegations in a petition described in Section 4 of this chapter are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a). A trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied. The trial court also must "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." Id. Courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide

5

support, and lack of adequate housing and employment.  <u>A.F. v. Marion Cnty. Office of Family & Children</u>, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), <u>trans. denied</u>.

Duration and Timing of Child's Removal

Mother's first contention on appeal is that there was insufficient evidence as to the requirements of Subsection 31-35-2-4(b)(2)(A), pertaining to the duration and timing of Child's removal from the home.  Specifically, Mother contends that procedural irregularities surrounding the termination of DCS's wardship of Child deprived her of due process.  Mother contends that the court's order terminating DCS's wardship essentially "restarted the clock" as to Subsection 31-35-2-4(b)(2)(A)(i); this, Mother insists, demonstrates that DCS failed to establish by clear and convincing evidence the timing and duration elements required for termination of her parental rights.  DCS disagrees.

We need not address this conflict.  DCS alleged in its petition, following the language of the statute, that any one of the three subsections, 31-35-2-4(b)(2)(A)(i), (ii), or (iii) applied.  As with other provisions of the statute, Subsection 31-35-2-4(b)(2)(A) is written in the disjunctive so that DCS need prove only one of the three alternatives, <u>cf.</u> <u>L.S.</u>, 717 N.E.2d at 209 (interpreting disjunctive statutory language as to Subsection 31-35-2-4(b)(2)(B)), and the trial court found that one or more of the subsections applied.  Our review of the record discloses that Child was removed from Mother's care in October 2009 and was found a CHINS that same month; was returned to the home in December 2011, while still a CHINS; was removed again in May 2012; and was never again returned to the home.  Thus, in the twenty-two months from the finding that Child was a CHINS, Child

6

was removed from Mother's home in excess of seventeen months. Indeed, the record reveals that Child was removed from Mother's home for all but six months of the nearly six-year duration of the entire CHINS action. And at all times, DCS supervised Child's placement in foster care and offered court-ordered services to Mother.

To the extent Mother now contends that there was insufficient evidence under Subsection 31-35-32-4(b)(2)(A)(i), or that the irregularities of the trial court's order for dismissal of the CHINS action were violations of due process rights, she has failed to establish that this was anything other than harmless error. See Ind. Trial Rule 61 (affording no appellate remedy for errors that do not affect the substantial rights of a party).[1] Accordingly, we conclude that there was sufficient evidence upon which the trial court could determine that the timing and duration requirements of Subsection 31-35-2-4(b)(2)(A) were satisfied.

<u>Sufficiency as to Reasons for Removal and Child's Best Interests</u>

Mother also challenges the sufficiency of the evidence with respect to two other required elements of the termination statute: whether either there was no reasonable probability that the conditions leading to Child's removal from the home would be remedied or continuation of the parent-child relationship posed a threat to Child's well-

---

[1] While Mother baldly states that "DCS also clearly failed to show either of the other two options stated in I.C. § 31-35-2-4(b)(2)(A) … apply to this case," she makes no cogent argument or citation to the record in support of the assertion. See Ind. Appellate Rule 46(A)(8) (requiring cogent argument and citation to authorities and the record of proceedings).

7

being, see I.C. §§ 31-35-2-4(b)(2)(B)(i) & (ii), and whether termination was in Child's best interests. See I.C. § 31-35-2-4(b)(2)(C).

As to the first of these, Subsection 31-35-2-4(b)(2)(B) is written in the disjunctive, so that a termination order may be affirmed where there is sufficient evidence on only one of the prongs of the subsection. L.S., 717 N.E.2d at 209. Here, evidence was presented that Child was initially removed from the home due to allegations of domestic abuse. However, during the pendency of the CHINS action, Mother's ongoing pattern of recovery and relapse from her cocaine addiction precluded Child from returning to her care. During a recovery period, in December 2011, Child was returned to Mother's care, but within less than six months, Mother had tested positive for cocaine use on several occasions, and Child was again removed from the home. Mother continued her pattern of recovery and relapse from cocaine use, testing positive for cocaine in November 2013 after completing a treatment program. Mother routinely missed drug testing appointments administered by various treatment programs and separately by DCS, with one such missed appointment falling the week before the termination hearing.

Mother suffered from depression, and twice attempted suicide during the pendency of the CHINS proceeding; one of these attempts came in October 2013, after DCS had filed its petition to terminate the parent-child relationship. Mother also experienced multiple incidents with domestic violence. She denied having any such difficulties and declined DCS-ordered counseling for domestic violence, yet DCS workers testified that they continued to have concerns about the safety of Mother's home.

8

To the extent Mother argues that her cocaine use was a "problem in the past," that she "believes that she has demonstrated that her past drug use has changed" and is benefitting from counseling, and that DCS should have paid for continued substance abuse treatment, these are invitations to reweigh evidence. (Mother's Br. at 27.) The trial court's conclusion, which finds support in the record, is that Mother's pattern of abuse was one of periods of sobriety followed by periods of relapse, including positive drug tests after twice completing treatment programs in 2011 and 2013. We accordingly conclude that it was not error for the court to find that DCS had proved by clear and convincing evidence that there was not a reasonable likelihood that the conditions causing Child's removal from the home would be remedied.

We also cannot agree with Mother that DCS failed to prove that termination was in Child's best interests. Child was removed from Mother's care in October 2009, when Child was six months old. During the entire period from October 2009 until the State's petition to terminate the parent-child relationship in July 2013, Child resided with Mother less than six months. The single extended period of time during which Child resided with Mother began in December 2011 and ended in May 2012 with Child's removal from the home due to Mother's relapse into cocaine use. Yet during supervised visitation, Child does not respond to Mother as a maternal figure because "[f]or a majority of his life this child has not lived with [Mother]" (Tr. at 207), and Child's Guardian ad Litem testified that "[Mother] hasn't been able to fix all of her problems in four years time, [and] we can't make this child wait any longer" for a stable home. (Tr. at 210). Mother rests her argument

that DCS failed to adduce sufficient evidence that termination of the parent-child relationship is in Child's best interests upon her efforts at rehabilitation and relatively steady employment, without reference to any other factors. Thus, Mother again asks us to reweigh evidence, which this Court cannot do.[2]

## Conclusion

DCS established by clear and convincing evidence the requisite elements for termination of Mother's parental rights as to Child.

Affirmed.

NAJAM, J., and PYLE, J., concur.

---

[2] Mother contends, without citation to the record or cogent argument, that DCS's plan for Child's adoption is not a satisfactory one. See App. R. 46(A)(8)(a). We accordingly decline to address her argument here, though we note that generally a plan for adoption is a satisfactory plan for care and treatment. See In re D.J., 755 N.E.2d 679, 685 (Ind. Ct. App. 2001), trans. denied.